IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANTA FE COMMUNITY COLLEGE,

      Plaintiff/Counter-Defendant,

vs.                                            Civ. No. 20-1151 SCY/KK

ZTARK BROADBAND, LLC, a cancelled
California Limited Liability Company,

      Defendant/Counter-Plaintiff.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

This dispute arises from two broadband lease agreements Defendant Ztark Broadband, LLC ("Ztark") made in 2006: one with Plaintiff Santa Fe Community College ("SFCC") and another with a different entity, and later transferred to SFCC. The 15-year history between the parties is summarized in the Court's Memorandum Opinion and Order on Defendant's motion for summary judgment (Doc. 116) and so the Court will not repeat it here. As is relevant for this motion, SFCC filed this action for declaratory judgment, seeking a declaration from the Court that the lease agreements cannot be enforced against it. Doc. 35 at 9. Ztark filed a counterclaim, asserting five counts: (I) breach of duty to give notice of breach and opportunity to cure; (II) breach of duty to participate in and cooperate with FCC lease approval applications; (III) breach of duty to negotiate renewal of the leases; (IV) breach of duty to not obstruct assignment of the leases; and (V) specific performance of FCC lease approval, lease renewal, and assignment. Doc. 38.

Plaintiff SFCC filed three motions for summary judgment, each aimed at a different count of the counterclaim. Those motions are fully briefed and the Court held a hearing on January 6, 2022. *See* Docs. 66, 88, 98 (briefing on motion for summary judgment on count II);

Docs. 69, 89, 102 (briefing on motion for summary judgment on count IV); Docs. 71, 90, 100 (briefing on motion for summary judgment on count V); Doc. 111 (hearing minutes).[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 11, 12, 13. For the reasons set forth below, the Court denies SFCC's requests for summary judgment as to count II, count IV, and count V of the counterclaim.

## UNDISPUTED MATERIAL FACTS

Except as otherwise noted, the following facts are undisputed. Where facts are disputed, for purposes of these summary judgment motions, the Court views the facts in the light most favorable to Ztark, as the non-moving party.

A few sections of the 2006 lease agreements are relevant to these motions. First, Section 4(c) of the 2006 lease agreements provides that

> The parties agree to cooperate to prepare and file with the FCC all applications, forms, related exhibits, certifications and other documents necessary to obtain the FCC's consent to this Agreement and satisfy the FCC's requirements for long term de facto lease approval as set forth in 47 C.F.R. § 1.9030(e) ("FCC Long Term Lease Application"). Each party covenants and agrees that it will fully cooperate with the other, and do all things reasonably necessary to timely submit, prosecute and defend the FCC Long Term Lease Application … and will promptly file or provide the other Party with all other information which is required to be provided to the FCC in furtherance of the transactions contemplated hereby.

Plaintiff's Undisputed Material Fact on Motion for Summary Judgment on Count II ("II-UMF") No. 1, Doc. 66 at 2; Plaintiff's Undisputed Material Fact on Motion for Summary Judgment on

---

[1] Due to time, and at the parties' agreement, the hearing was largely dedicated to Ztark's motion for summary judgment and the motion to certify.

Count V ("V-UMF") No. 1, Doc. 71 at 2.[2] This section requires the parties to "timely" submit FCC applications. II-UMF No. 2; V-UMF No. 2.

Ztark argues, and SFCC disputes, that this section imposes on the parties joint, reciprocal duties to cooperate and participate in seeking FCC approval for the lease agreements. Defendant's Additional Material Fact on Motion for Summary Judgment on Count V ("V-AMF") No. 1, Doc. 90 at 5; Doc. 100 at 2 ¶ 1 (fact disputed). In a 2011 Memorandum of Understanding ("MOU") entered between SFCC and Ztark, Ztark agreed to "secure FCC approval of the Capacity Lease Agreements in accordance with the provisions of the Capacity Lease Agreements." II-UMF No. 3; V-UMF No. 3. SFCC asserts that the 2011 MOU does not specify whether this obligation applied to the 2011 leases negotiated by the parties, but never signed, or to the 2006 lease agreements. Doc. 100 at 2 ¶ 1. Ztark, on the other hand, argues that its agreement to take the lead on FCC approval contained in the 2011 MOU related to new capacity lease agreements, intended to replace the 2006 agreements, which the parties never executed. Doc. 88 at 3-4 ¶ 3; Doc. 90 at 3 ¶ 3. Ztark, therefore, argues that the parties' joint obligation to seek FCC approval under Section 4(c) of the 2006 lease agreements remained in place. Doc. 88 at 3-4 ¶ 3; Doc. 90 at 3 ¶ 3.

Next, Section 8 of the lease agreements provides that

> Either party may assign, transfer, or sell its rights and/or obligations under this Agreement without the prior written consent of the other party provided, however, that Lessor shall only assign this Agreement to an entity qualified to hold such FCC License under then-applicable FCC regulations. The assigning party must provide written notice to the other party no later than ten (10) business days after any such assignment, transfer, or sale.

---

[2] Ztark disputes this fact, "but only because SFCC does not quote all of the pertinent language of Section 4(c) of the lease agreements." Doc. 88 at 3 ¶ 1; Doc. 90 at 1 ¶ 3. Accordingly, the Court quotes the entire section as listed in the counterclaim and as cited by SFCC. *See* Doc. 38 at 10 ¶ 6.

3

Plaintiff's Undisputed Material Fact on Motion for Summary Judgment on Count IV ("IV-UMF") No. 2, Doc. 69 at 2; V-UMF No. 9. This authorizes both SFCC and Ztark to assign their interest in the leases without prior consent of the other party. IV-UMF No. 1; V-UMF No. 8.

In 2011, counsel for SFCC and Tyler Kratz, sole managing member of Ztark, exchanged emails indicating that both were aware of the obligation to submit an application for FCC approval of the leases. II-UMF No. 4; V-UMF No. 4. Ztark clarifies that these discussions happened in the context of negotiating new capacity lease agreements, to replace the 2006 lease agreements, and that both parties were aware of the requirement to submit the 2006 lease agreements to the FCC for approval, which remained in place because new lease agreements were never signed. Doc. 90 at 3 ¶ 4. Following the 2011 email exchange, Ztark did not request SFCC to cooperate in seeking FCC approval until November 12, 2020. II-UMF No. 5; V-UMF No. 5. Ztark asserts that after June 7, 2011, SFCC also never requested that Ztark cooperate or participate in seeking FCC approval of the 2006 lease agreements. Doc. 90 at 3 ¶ 5. SFCC agrees that it did not affirmatively seek FCC approval of the leases, but argues that it did not have such an affirmative duty under the lease agreements. V-AMF No. 3; Doc. 100 at 2 ¶ 3.

In February 2020, Ztark advised SFCC that it wished to assign its interest as lessee under the 2006 lease agreements to SoniqWave Networks, LLC ("SoniqWave"), which it may do under Section 8 of the agreements. IV-UMF Nos. 4, 5; Doc. 89 at 3 ¶ 5; V-UMF Nos. 10, 11; Doc. 90 at 4 ¶ 11; Defendant's Additional Material Fact on Motion for Summary Judgment on Count IV ("IV-AMF") No. 1, Doc. 89 at 3. Ztark asserts, and SFCC disputes, that on September 10, 2020 it advised SFCC that it was assigning the 2006 lease agreements to SoniqWave and that it would be sending paperwork to effectuate the assignment, including documentation for FCC approval of the transfer. IV-AMF No. 2; Doc. 102 at 2 ¶ 2 (fact disputed). Ztark further asserts, and SFCC

4

disputes, that "[b]ecasue SFCC and Ztark had not previously submitted the 2006 Agreements to the FCC for approval, the application that was to have been submitted to the FCC in the fall of 2020 in connection with the SoniqWave assignment would have shown SoniqWave as the lessee, and effectively would have served as the request for both original approval of the underlying 2006 Agreements and approval of the assignment." IV-AMF No. 4; Doc. 102 at 2 ¶ 4 (fact disputed). SFCC responded to Ztark's September 10, 2020 email by filing a complaint for declaratory judgment. IV-AMF No. 5; Doc. 102 at 2 ¶ 5.

On November 12, 2020, Ztark initiated the process of obtaining FCC approval of the 2006 lease agreements. Defendant's Additional Material Fact on Motion for Summary Judgment on Count II ("II-AMF") No. 1, Doc. 88 at 4. It did this by entering a long-term lease application form on the FCC's Universal Licensing System and certifying Ztark's portion of the application. II-AMF No. 1. Both the licensee and the lessee must provide and certify information on the form and so, on November 13, 2020, Ztark requested that SFCC participate and cooperate with it for the lease approval process. II-AMF Nos. 1, 2. Ztark requested that SFCC review the application and by November 20, 2020, either electronically certify and submit the application, or if changes needed to be made, make the changes, certify its portion of the application, and return it to Ztark for certification and submission. II-AMF No. 2. SFCC never did this and instead "has refused to participate and cooperate with Ztark in connection with the FCC's lease approval process." II-AMF No. 3. To date, the parties have not submitted applications for FCC approval of the 2006 lease agreements. V-UMF No. 2.

SFCC asserts that it did not cooperate with the lease application because it had "serious concerns about the enforceability of the Leases" and it "did not believe either SFCC or Ztark could perform the Lease provisions requiring the parties to 'timely submit, prosecute and defend

5

FCC Long Term Lease Application.'" Doc. 98 at 2 ¶ 3. To that end, SFCC argues that the November 2020 lease approval was not timely under Section 4(c). Doc. 98 at 2 ¶¶ 1, 2. Ztark, on the other hand, argues that SFCC had a duty to cooperate and participate in seeking FCC approval and, after June 2011, SFCC did not demand that Ztark take any steps to seek and obtain FCC approval of the 2006 lease agreements. Doc. 88 at 4 ¶ 5.

Ztark filed its counterclaim on November 25, 2020. II-UMF No. 6; V-UMF No. 6.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id*. In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted).

## DISCUSSION

SFCC moves for summary judgment on counts II, IV, and V of Ztark's counterclaim. The Court will address each in turn.

1. **Count II**

Count II of Ztark's counterclaim alleges breach of duty to participate in and cooperate with FCC lease approval applications. Doc. 38 at 10. Specifically, Ztark alleges that SFCC's failure to cooperate in November 2020 with the FCC lease approval applications is a breach of Section 4(c) of the leases. *Id.* at 11. SFCC argues that this breach claim is barred by the 6-year New Mexico statute of limitations or the 4-year California statute of limitations.[3] *See* NMSA § 37-1-3(A) ("Actions founded upon any bond, promissory note, bill of exchange or other contract in writing shall be brought within six years."); CA Civ. Pro. § 337 ("Within four years an action upon any contract, obligation or liability founded upon an instrument in writing . . . may be brought.").

As an initial matter, Ztark argues that SFCC has waived its statute of limitations defense by not raising it in its answer to the counterclaim. Doc. 88 at 5. SFCC does not dispute that it failed to plead this defense. Doc. 98 at 4. However, it asserts that Ztark also raised a statute of limitations defense in briefing summary judgment on SFCC's claims and "that as a matter of

---

[3] In this diversity action, the Court must apply the substantive law of the state. *See* Doc. 1 at 2 (Notice of Removal, indicating removal pursuant to diversity jurisdiction); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In its motion for summary judgment, Ztark indicates that the lease agreements include a choice-of-law provision which states that California law should govern. Doc. 53 at 9 n.1. However, Ztark "understands that SFCC contends that New Mexico substantive law should apply . . . on the theory that the agreements, including the choice of law provision, are unenforceable." *Id.* (citing Doc. 7, Joint Status Report). The Court need not resolve this issue because: (1) it does not appear the difference between a 4-year and 6-year statute of limitations would be outcome determinative; (2) applying either statute of limitations, the Court rejects SFCC's argument.

7

fairness, efficiency, and judicial economy, if the Court allows Ztark to move forward with its statute of limitations defense that it also allow SFCC to amend its answer and move forward with its statute of limitations defense as well." *Id.* Ztark, however, filed a motion to amend its answer to assert a statute of limitations defense (Doc. 67), which the Court granted (Doc. 114) but found the statute of limitations defense moot (Doc. 116). Here, SFCC did not file a similar motion to amend its answer to the counterclaim and so the Court will not decide at this time whether such an amendment would be timely. Instead, the Court assumes without deciding that SFCC can assert a statute of limitations defense. Even with such an assumption, SFCC's statute of limitations argument fails on the merits.

Looking at the big picture of this case, SFCC's overriding goal is to avoid enforcement of the lease agreements. SFCC's primary argument against enforcement of the lease agreements is that the agreements require "timely" submissions for approval to the FCC. At some point, the argument continues, the potential for timely submissions passed and performance of the "timely submission" requirement became impossible. Ztark has two primary responses to this argument: (1) the parties had a mutual obligation to seek timely approval and, rather than terminating the contracts, their mutual failure to meet this obligation acted as a waiver to the enforcement of this term; (2) Ztark could not be in breach of the lease agreements unless SFCC complied with its notice and opportunity to cure obligation, an obligation with which SFCC never did comply.

Ztark claims SFCC breached the lease agreements in 2020 when it failed to cooperate with seeking FCC approval, a period indisputably within any potential statute of limitations. SFCC, however, argues that Ztark's claim could only be made when "timely" submission was possible. Doc. 98 at 2-3 ¶ 3 (arguing that Ztark's attempt in November 2020 to seek FCC approval was not timely as required by Section 4(c), which is why it did not participate in

submitting the applications). Therefore, according to SFCC, Ztark's cause of action accrued no later than the point when timely converted to untimely, i.e., when so much time had passed that timely submission to the FCC became an impossibility. SFCC asserts that Ztark knew or should have known about the need to seek FCC approval of the leases no later than June 2011, when the parties exchanged emails regarding FCC approval. Accordingly, at the latest, timely converted to untimely shortly after 2011—more than 6 (or 4) years before Ztark filed its counterclaim in 2020. This argument, however, fails because the lease agreements indisputably contain a notice of breach and opportunity to cure requirement (*see* Docs. 53-5 at 7, 53-6 at 7) and that provision, which must be invoked before a breach can occur and the statute of limitations clock can begin running, was never invoked before this lawsuit was filed (*see* Docs. 53 at 7 ¶ 25, 61 at 6 ¶ 25 (undisputed material facts in Ztark's motion for summary judgment)).

Alternatively, and more simply, SFCC's statute of limitations argument fails because the conduct (or, more specifically, failure to engage in required conduct) that Ztark complains about happened in 2020, well within any potential statute of limitations. 2011 cannot be the anchor point for statute of limitations purposes on Ztark's claims because Ztark is not alleging that SFCC violated the lease agreements in 2011 (or, for that matter, anytime between 2011 and 2020). Based on the undisputed material facts, although the parties exchanged emails regarding the need to submit FCC applications in 2011, neither Ztark nor SFCC sought to submit such applications in 2011. II-UMF Nos. 4, 5. Because Ztark did not seek to submit FCC applications in 2011, and therefore did not request that SFCC participate in and cooperate with FCC applications in 2011, SFCC did not breach its alleged duty to participate and cooperate in 2011. Instead, it was not until November 2020 that Ztark initiated the FCC applications and requested that SFCC review, certify, and submit them. II-AMF Nos. 1, 2. Accordingly, even though the

9

parties knew in at least 2011 that they needed to submit FCC applications, Ztark did not request SFCC's participation and cooperation in the application process until November 2020. Ztark's counterclaim for breach of duty to participate in and cooperate with FCC lease approval applications is therefore based on conduct in November 2020, not 2011. As such, the statute of limitations to file a breach of contract claim had not run when it filed its counterclaim on November 25, 2020.

SFCC also argues that Ztark was not diligent in seeking FCC approval, which has prejudiced SFCC, and Ztark's counterclaim is therefore barred by the doctrine of laches. *Id.* at 4-5. SFCC raises this issue of laches for the first time in its reply brief and, as such, the Court will not consider it at this time. *See Gutierrez v. Cobb*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief."). Indeed, whether SFCC was justified in failing to participate in and cooperate with the FCC applications or whether Ztark's claim for breach is barred by the doctrine of laches are separate from the present statute of limitations issue which pertains to whether Ztark's claim for breach of duty to participate and cooperate arose from the parties' actions in 2020 or within a timeframe outside the statute of limitations period.

   2. **Count IV**

Count IV of Ztark's counterclaim alleges breach of the duty to not obstruct assignment of the leases. Doc. 38 at 14. Ztark explains that it plans to assign its interest in the 2006 lease agreements to SoniqWave and it "has requested SFCC to cooperate with it in submitting

documentation to the FCC regarding the assignment . . . ." *Id.* ¶ 19.[4] SFCC, however, has refused to cooperate with Ztark, thereby breaching its duty not to obstruct assignment of the leases. *Id.*

SFCC moves for summary judgment on this count of the counterclaim, first asserting that it fails under the applicable statute of limitations. SFCC relies on the same statute of limitations arguments it made in support of its motion for summary judgment on count II of the counterclaim. The Court rejects these statute of limitations arguments for the same reasons discussed above on count II.

SFCC next asserts that count IV fails as a matter of law because SFCC has no contractual obligation to affirmatively assist Ztark with assignment of the leases. In response, Ztark points to two duties under the lease agreements that it alleges SFCC violated when it failed to cooperate with approval for the assignment. First, Ztark alleges that SFCC has an express duty to cooperate under Section 8 and Section 4(c). Section 8 allows either party to assign its interest to a third party. IV-UMF No. 2. Section 4(c) requires the parties to "cooperate to prepare and file with the FCC all applications, forms, related exhibits, certifications and other documents necessary to obtain the FCC's consent to this Agreement and satisfy the FCC's requirements for long term de facto lease approval as set forth in 47 C.F.R. § 1.9030(e) ('FCC Long Term Lease Application')" and to "promptly file or provide the other Party with all other information which is required to be provided to the FCC in furtherance of the transactions contemplated hereby." II-UMF No. 1; *see also* Docs. 53-5 & 53-6 (lease agreements attached to Defendant's motion for summary judgment); 47 C.F.R. § 1.9030(e) (discussing requirements for approval of long-term transfer

---

[4] Ztark notes any transfer for an interest of a lessee (i.e., Ztark's transfer to SoniqWave) must be approved by the FCC. *See* 47 C.F.R. § 1.9030(h) (requiring an assignment of the lease agreement be approved by the FCC pursuant to the same application and procedures used for initial approval of a lease agreements under § 1.9030(e)).

11

leasing arrangements). Read together, Ztark alleges that "these two provisions require SFCC to cooperate and participate in obtaining the FCC's approval of the lease of the subject EBS licenses to Ztark's assignee—effectively, approval of the assignment—particularly if that assignment occurs prior to the FCC's initial approval of the Agreements." Doc. 89 at 2. Said another way, Ztark argues that once the leases are assigned, SoniqWave assumes Ztark's position in the leases. Thus, Ztark asserts, under Section 4(c), the parties (now SFCC and SoniqWave) have a duty to cooperate for FCC approval, whether that be the initial approval of the lease agreements (which was never obtained) or approval of the assignment. Ztark alleges that it attempted to submit an application in September 2020 for both approval of the leases and approval of the assignment. However, Ztark maintains, these applications were not successful, because SFCC breached its duty to cooperate.

      The Court agrees with SFCC that the lease agreements contain no explicit requirement for it to assist Ztark in assigning the leases or in getting FCC approval of a lease assignment. Section 4(c) refers to "all applications . . . necessary to obtain the FCC's consent to this Agreement." The term "this Agreement" in Section 4(c) clearly refers to the 2006 lease agreement, not the assignment agreement between Ztark and SoniqWave. However, Section 4(c) also refers to "*all* other information which is required to be provided to the FCC in furtherance of the transactions contemplated hereby" (emphasis added). Here, although not explicit, the Court finds that whether "the transactions contemplated hereby" encompass assignment of the lease is ambiguous. As such, "the meaning to be assigned the unclear term is a question of fact." *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 13, 845 P.2d 1232. The existence of this ambiguity and question of fact renders resolution of this counterclaim inappropriate on summary judgment.

12

In addition to relying on the cooperation language in Section 4(c), Ztark alleges that SFCC breached its implicit duty of good faith and fair dealing when it obstructed assignment of the leases. It argues that SFCC "has an implied duty of good faith and fair dealing under the 2006 Agreements to not act in a manner that will withhold the benefits of the Agreements, including Ztark's right to assign its interest as lessee of the underlying licenses." Doc. 89 at 2.

"New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7, 188 P.3d 1200. As SFCC acknowledges, "the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." Doc. 102 at 3 (citing *Sanders*, 2008-NMSC-040, ¶ 7). Whether refusing to cooperate in the FCC application for approval of the lease assignments is an act on the part of SFCC that injures Ztark's right to receive the benefit of the agreements (i.e., the benefit of assigning the leases) is a disputed question of fact. *See Gilmore v. Duderstadt*, 1998-NMCA-086, ¶ 24, 961 P.2d 175 ("Whether there has been a breach of the covenant of good faith and fair dealing is a factual inquiry that focuses on the contract and what the parties agreed to.").

In sum, although the Court agrees that the lease agreements contain no language explicitly creating a duty, for the reasons Ztark articulates, disputed questions of material fact exist regarding whether non-explicit language in Sections 4(c) and 8, or an implied covenant of good faith and fair dealing, created an affirmative obligation for SFCC to do, or not do, something related to Ztark's ability to assign its lease interests. As such, the Court must deny summary judgment.

3.  **Count V**

In count V of the counterclaim, Ztark seeks specific performance of the FCC lease approval, lease renewal, and assignment. Doc. 38 at 13. SFCC moves for summary judgment on count V's claims for specific performance of the lease approval and assignment, asserting that it "cannot now be required to cooperate in seeking FCC approval of the Leases based on the doctrine of laches" and it "cannot be required to cooperate in seeking FCC approval of assignment of Ztark's interest in the Leases to SoniqWave Networks, LLC because it has no contractual obligation to do so." Doc. 71 at 1-2. The Court will address each argument in turn.

First, SFCC requests summary judgment on Ztark's claim for specific performance of assignment of the lease agreements, arguing that it has no contractual obligation to cooperate in submitting documents to the FCC regarding Ztark's assignment of the leases. For the same reasons discussed above in count IV, the Court denies summary judgment on this issue.

Next, SFCC requests summary judgment on Ztark's claim for specific performance of approval of the lease agreements, arguing Ztark's demand is barred by the doctrine of laches. Under New Mexico law,[5] laches has four elements:

> (1) the defendant's invasion of plaintiff's rights;[6] (2) a delay in asserting plaintiff's rights, after having had notice and an opportunity to institute a suit; (3) lack of knowledge in the defendant that the plaintiff would assert his rights, and (4) injury or prejudice to the defendant in [the] event relief is accorded to the plaintiff or suit is not held to be barred.

---

[5] As discussed with count II, the parties may disagree about whether to apply New Mexico or California substantive law. In the present motion, however, both sides discuss New Mexico law and neither make an argument that California law should apply. As such, the Court applies New Mexico law.

[6] As applicable to the counterclaim at issue (Ztark's counterclaim that SFCC breached its duty to cooperate in seeking FCC approval of the lease agreements ), SFCC would be the defendant.

*Butcher v. City of Albuquerque*, 1980-NMSC-127, ¶ 10, 620 P.2d 1267. In other words, "[t]he doctrine of laches prevents litigation of a stale claim where the claim should have been brought at an earlier time and the delay has worked to the prejudice of the party resisting the claim." *Garcia v. Garcia*, 1991-NMSC-023, ¶ 30, 808 P.2d 31. "Laches focuses on the conduct of the party to be estopped, so that the trial court can evaluate whether that party's unreasonable delay in raising the claim has prejudiced the defendant." *Brown v. Taylor*, 1995-NMSC-050, ¶ 12, 901 P.2d 720.

Looking first at the delay element, SFCC points out that the 2006 lease agreements require the parties to "timely" submit applications for FCC approval. It argues that Ztark knew or should have known in 2011 about the need for FCC approval. Accordingly, it asserts that "Ztark slept on its rights regarding SFCC cooperation in seeking FCC approval," and the "doctrine of laches bars [Ztark] from demanding specific performance regarding such cooperation nearly 15 years after the Leases were signed and nearly a decade after all the parties were on clear notice that FCC approval of the Leases was required before Ztark could use any spectrum." Doc. 71 at 5. Ztark, on the other hand, argues that under Section 4(c), the parties had a joint, reciprocal obligation to seek FCC approval, so if Ztark's delay in seeking approval was unreasonable, so was SFCC's delay in seeking approval.

Section 4(c) provides that "parties agree to *cooperate* to prepare and file with the FCC all applications . . ." and that "[e]ach party covenants and agrees that it will *fully cooperate* with the other, and do all things reasonably necessary to timely submit, prosecute and defend the FCC Long Term Lease Application . . . ." V-UMF No. 1 (emphasis added). SFCC, however, argues that Ztark had sole responsibility to seek FCC approval following an agreement in a 2011 MOU. In the 2011 MOU, Ztark agreed to "secure FCC approval of the Capacity Lease Agreements in

15

accordance with the provisions of the Capacity Lease Agreements." V-UMF No. 3. The parties dispute whether this section applied to the 2006 lease agreements or to the contemplated 2011 lease agreements which the parties never executed. SFCC argues that, under the 2011 MOU language, Ztark had sole responsibility to seek FCC approval of the 2006 lease agreements. Ztark, on the other hand, argues that this language applied to the contemplated but unexecuted lease agreements. Because those new lease agreements were never executed, Ztark argues, the 2006 lease agreements' provision that placed the duty to seek FCC approval on both parties remained in place.

      Drawing all reasonable inferences in favor of Ztark, the non-moving party, a rational trier of fact could conclude that the reference to "the Capacity Lease Agreements" in the 2011 MOU referred to the contemplated-but-not-entered lease agreements rather than the 2006 agreements. Indeed, the introduction to the 2011 MOU references Capacity Lease Agreements that the parties "have agreed to enter," which likely refers to the lease agreements the parties negotiated between 2009 and 2011 but never executed. *See* Doc. 53-9 at 1. Given this introductory language, the subsequent language in Section 3 of the 2011 MOU that puts the onus on Ztark to seek FCC approval of the Capacity Lease Agreements is most naturally read as a reference to the same unexecuted lease agreements, not the 2006 lease agreements. Additionally, Section 4(b) of the 2011 MOU provides that, "Nothing in this Memorandum of Understanding alters any provisions . . . of the form Capacity Lease Agreements to which the Parties have previously agreed, or of any other agreements between SFCC and Ztark." *Id.* at 2. This section seems to confirm that the provisions of the 2006 lease agreements (including the provision to cooperate on seeking FCC approval) remain unchanged.

Given these provisions, the Court finds a dispute of material fact exists regarding whether SFCC and Ztark carried a joint responsibility to seek FCC approval and the Court cannot determine that, as a matter of law, Ztark unreasonably delayed in seeking specific performance for SFCC's cooperation in FCC lease approval. Similarly, Ztark argues that SFCC is not prejudiced by its failure to seek FCC approval because SFCC, likewise, failed to seek FCC approval. That is, SFCC cannot blame Ztark for prejudice resulting from the lack of FCC approval when SFCC had an equal duty and opportunity to seek FCC approval. Again, given these disputes as to whether SFCC carried a joint responsibility to seek FCC approval and has therefore not been prejudiced, the Court must deny summary judgment based on SFCC's defense of laches.

A further dispute exists regarding whether SFCC has suffered unfair prejudice, even assuming Ztark did unreasonably delay in bringing this claim for specific performance. This factual dispute prevents the Court from granting SFCC summary judgment based on the doctrine of laches. SFCC argues that Ztark's delay in seeking FCC approval has prejudiced it because it does not receive its lease fees until the FCC approves the leases, which has not happened yet. Doc. 71 at 5.[7]

Ztark counters that SFCC is not prejudiced because it has paid, or will pay, the lease fees contemplated in the 2006 lease agreements.[8] Regarding the 2006 lease agreement with SFCC,

---

[7] In its reply, SFCC also argues for the first time that it was prejudiced by "the loss of access to key witnesses from the 2011 timeframe." Doc. 100 at 5. The Court will not consider this argument raised for the first time in reply. *See Gutierrez v. Cobb*, 841 F.3d 895, 902 (10th Cir. 2016). The Court notes, however, that SFCC did not specifically identify the witnesses to whom it longer has access and what testimony is lost as a result.

[8] The lease agreements refer to payments between $35,000 and $40,000 (for the lease agreement with SFCC) and between $60,000 and $65,000 (for the lease agreement originally with CSF).

17

Ztark acknowledges that it has not paid SFCC the $40,000 one-time payment called for under the contract once FCC approval is obtained. Ztark argues, however, that it stands ready, and has always stood ready, to honor the terms of its 2006 agreement with SFCC by paying the negotiated $40,000 fee once the condition precedent for that payment is met: FCC approval of the lease agreement. Notably, SFCC is not, at this time, requesting Ztark to pay the $40,000 one-time payment the parties agreed in 2006 would cover a 15-year lease of SFCC's license. Drawing all factual inferences in favor of Ztark, before the 15-year term of the 2006 agreement ran, SFCC had the option of consummating that terms of the 2006 agreement and obtaining the $40,000 payment for which it negotiated in 2006. Under these facts, the Court cannot say as a matter of law that SFCC has been prejudiced.

This prejudice inquiry is less straightforward with regard to the 2006 lease agreement with CSF. Ztark argues that in 2010, "Ztark and SFCC agreed that, in lieu of any payment of the $65,000 lease fee that otherwise would be due under Ztark's 2006 Agreement with CSF, Ztark would pay CSF the $95,000 price for CSF's agreement to sell CSF's EBS license to SFCC." Doc. 90 at 4. The reason Ztark agreed to pay, and did pay, $95,000 to CSF ($65,000 of which encompassed the lease fee from the lease originally with CSF) even though SFCC, not Ztark, was getting the license, was to preserve Ztark's ability to lease the license CSF originally owned and was transferring to SFCC. Ztark's main point, however, is that *it has already paid* the lease fee called for in the 2006 capacity lease agreement with CSF. But this argument does not explain what SFCC gets out of receiving CSF's license and then leasing it to Ztark.

---

*See* Docs. 53-5, 53-6. In their briefs, however, the parties only refer to the fees as $40,000 and $65,000, respectively. Accordingly, the Court will do the same.

18

It appears that when Ztark and SFCC entered into their 2010 "Agreement for the Transfer and Lease of License," they contemplated entering into a separate Capacity Lease Agreement. *See* Doc. 53-7 at 3-13. Under this 2010 contemplated Capacity Lease Agreement, after SFCC obtained CSF's license, the parties contemplated Ztark leasing this license from SFCC, with Ztark making a $5,000 payment to SFCC within ten business days after the "fifth anniversary of the FCC final approval of this Agreement" and a "$10,000 payment to SFCC within ten business days after the "tenth anniversary of the FCC final approval of this Agreement." Doc. 53-7 at 8. However, neither party claims they signed and entered into such a Capacity Lease Agreement in 2010. Nonetheless, the parties did enter into the 2010 "Agreement for the Transfer of Lease of License," which states: "When SFCC takes transfer of the License, SFCC and Ztark, or an affiliated or assigned entity of Ztark, agree to enter into a Capacity Lease Agreement in exactly the same form attached hereto as Appendix A for the lease of the excess capacity on the Channels." Doc. 53-7 at 1 (emphasis in original). What effect the parties' 2010 agreement to enter into a capacity lease agreement has on the parties' respective obligations has not been briefed and is beyond the scope of this order.

Within the scope of this order, however, is the question of whether Ztark's alleged actions prejudiced SFCC by preventing it from receiving any payment at all in connection with a lease to Ztark for the license it obtained from CSF. If Ztark's position is that SFCC must lease to Ztark the license SFCC obtained from CSF, without Ztark having to pay SFCC any consideration to SFCC, SFCC's prejudice argument with regard to the license it received from CSF in 2010 is stronger than its prejudice argument with regard to the license it possessed (subject to FCC reinstatement) in 2006 and, at that time, agreed to lease for $40,000. Nonetheless, even if SFCC received no payment in connection with the lease of the former CSF license to Ztark, drawing all

19

reasonable factual inferences in favor of Ztark, at the end of the day SFCC will have received a license from CSF for which SFCC paid nothing.[9] Moreover, SFCC does not assert what it would have received in connection with the former CSF license but for Ztark's failure to act more quickly. Accordingly, a factual dispute exists as to whether Ztark's alleged delay prejudiced SFCC in connection with the former CSF license.

## CONCLUSION

For these reasons, the Court rules as follows:

- Plaintiff/Counter-Defendant Santa Fe Community College's Motion for Summary Judgment as Count II of Ztark's Counterclaim (Doc. 66) is DENIED;

- Plaintiff/Counter-Defendant Santa Fe Community College's Motion for Summary Judgment on Count IV of Ztark's Counterclaim (Doc. 69) is DENIED;

- Plaintiff/Counter-Defendant Santa Fe Community College's Motion for Partial Summary Judgment on Count V of Ztark's Counterclaim (Doc. 71) is DENIED.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by consent**

---

[9] Given language in the 2006 capacity lease agreement allowing for a 15-year renewal of the original agreement, the end of the day may be in 2036.