IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANTA FE COMMUNITY COLLEGE,

    Plaintiff/Counter-Defendant,

v.                                          Case No. 1:20-cv-01151-SCY-KK

ZTARK BROADBAND LLC, a cancelled
California Limited Liability Company,

    Defendant/Counter-Plaintiff.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTION TO EXCLUDE
TESTIMONY OF ANDREAS BITZARAKIS[1]**

Plaintiff Santa Fe Community College ("SFCC") filed a Motion to Exclude Testimony of Defendant's Expert Andreas Bitzarakis (Doc. 65) in which it seeks to prevent Defendant Ztark Broadband LLC ("Ztark") from calling Mr. Bitzarakis to provide any expert testimony at trial. The 15-year history between the parties is discussed in the Court's Memorandum Opinion and Order on SFCC's Motion for Summary Judgment, and so the Court will not repeat it here. *See* Doc. 116. In sum, this case involves licenses and leases for excess broadband spectrum capacity. SFCC sought declaratory judgment that the lease agreements were unenforceable, unconstitutional, and unconscionable; Ztark counterclaimed for breach, seeking compensatory and punitive damages as well as specific performance. Doc. 35 at 9; Doc. 38 at 14. The Court granted Ztark's motion for summary judgment as to all SFCC's claims for declaratory judgment. Doc. 116. This order did not resolve this case, however, as the counterclaims remain intact (*see* Doc. 117) and SFCC's motion for reconsideration of the Court's order is pending (Doc. 122).

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 11, 12, 13

Thus, Ztark still seeks to call Mr. Bitzarakis to testify as an expert. *See* Doc. 123. Based on his specialized experience in the field of broadband spectrum licensing, Mr. Bitzarakis meets the standard for an expert witness. The Court, however, will limit his testimony such that Mr. Bitzarakis is precluded from placing a value on the licenses, including by testifying that no one would be interested in buying the licenses which, therefore, have a value of zero. Accordingly, the Court GRANT IN PART and DENIES IN PART Plaintiff's motion to exclude Mr. Bitzarakis's testimony.

## LEGAL STANDARD

Federal Rule of Evidence 702 ("FRE 702") states in relevant part, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue . . . ." The trial judge serves as a gatekeeper to ensure that expert witness testimony is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (*Daubert* gatekeeping requirement applies not only to scientific testimony, but to all expert testimony).

*Daubert* suggested several factors, such as whether a scientific theory or technique can be—and has been—tested, whether it is subject to peer review, whether the known error rates are high, and whether the relevant scientific community generally accepts that theory or technique. 509 U.S. at 593-94. However, *Daubert* itself recognized the need for a flexible analysis, and *Kumho Tire* clarifies that the *Daubert* factors are neither comprehensive nor applicable in all circumstances. 509 U.S. at 594; 526 U.S. at 150-51. The district court has discretion to determine how it performs its gatekeeping function, but not *whether* to perform such a function. *Dodge v.*

*Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003). In general, expert testimony should be liberally admitted. *U.S. v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995).

In diversity cases like this one (*see* Doc. 1), the Tenth Circuit applies federal evidentiary rules "unless the state law reflects substantive concerns or policies." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 880 (10th Cir. 2006). New Mexico's Rule 11-702 contains identical language through part (a) of FRE 702: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." SFCC relies only upon this shared language, obviating the need to analyze whether New Mexico's evidentiary rules reflect substantive concerns or policies. *See* Doc. 65 at 4.

## DISCUSSION

SFCC challenges Mr. Bitzarakis's qualifications, the reliability of his opinions, and his ability to offer testimony based on his specialized knowledge. The Court addresses each of these arguments in turn.

### I.     Qualified by Knowledge, Skill, Experience, Training, or Education

SFCC argues that Mr. Bitzarakis is not "qualified" under FRE 702 and NMRA Rule 11-702. Doc. 65 at 5. In support, it cites Mr. Bitzarakis's repeated deposition testimony that he is not an expert on valuation of licenses, his lack of education or training beyond a high school degree and a year and a half of community college international business classes, the fact that he only began working with spectrum licenses like those at issue in this case in 2017, and his lack of prior experience as an expert witness. *Id.* at 5–6, 8.

Ztark responds with a focus on Mr. Bitzarakis's experience: that he is the managing member of a brokerage firm that advises clients regarding encumbered 2.5 GHz licensed assets such as those at issue here, that he is also the director of broadband practice for another brokerage firm in which he typically represents the licensee of 2.5 GHz assets, and that he is involved with a third entity that purchases spectrum. Doc. 87 at 2-3. Although Mr. Bitzarakis admits that he is not qualified to assess the value of licenses, he will testify about "the circumstances and considerations to take into account while determining the value for EBS [Educational Broadband Services] licenses." *Id*. at 2. Because Mr. Bitzarakis regularly brokers or facilitates broadband transactions as a part of his employment, Ztark argues that he is qualified to discuss factors that might increase or decrease the value of a broadband license. *Id.*

SFCC replies that Mr. Bitzarakis's intended testimony about low or nonexistent interest in purchasing encumbered licenses is, functionally, testimony that the value of those licenses will be zero. Doc. 96 at 3. SFCC cites an Internal Revenue Service ("IRS") publication on the concept of "discount for lack of marketability"—the task of valuing something that is not marketable—in support of the proposition that Mr. Bitzarakis's opinion about low marketability is an oblique way of opining on the licenses' value, which he has stated he is not qualified to do. *Id.* at 4-5.

The Court first considers Mr. Bitzarakis's experience. Ztark is correct that specialized experience can, on its own, serve as a justification for expert testimony even in the absence of formal education or training. *See* Fed. R. Evid. 702 Advisory Committee Notes (2000) ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony."). Mr. Bitzarakis has, since 2017, worked in the specialized field at issue here:

4

brokerage of encumbered 2.5 GHz licensed assets. While five years of experience does not constitute a lengthy career, other industries have found it to be a permissible length of time to develop specialized knowledge. *See, e.g.*, *In re Byington*, 197 B.R. 130, 131 (D. Kan. 1996) (tractor valuation expert had two years' experience selling and appraising tractors at retail and wholesale); *U.S. v. Baca*, 687 F.2d 1356, 1360 (10th Cir. 1984) (police heroin analyst had five years' experience and his credentials were credibility issue for jury); *Jones v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 19-cv-01873, 2021 WL 3625435, at *8 (D. Colo. Apr. 27, 2021) (witness with five years' experience based on self-study qualified as expert in medical billing industry). Accordingly, given the liberal spirit with which a district court is to qualify experts, the Court considers five years' experience sufficient for Mr. Bitzarakis to testify as an expert witness. His credentials will, no doubt, serve as the subject of cross-examination. *See* Fed. R. Evid. 702 Advisory Committee Notes (2000) ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system . . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (citations omitted)).

Regarding whether testimony about market demand for a product is impermissibly intertwined with testimony about the value of that product, the Court sees the two topics as related but distinct. The lengthy IRS publication SFCC cites indicates that marketability can affect value in a variety of ways; the correlation is not simple. *See generally* Discount for Lack of Marketability: Job Aid for IRS Valuation Professionals, Internal Revenue Service, at 2 (Sept. 25, 2009), available at https://www.irs.gov/pub/irs-utl/dlom.pdf ("It is emphasized that . . . the establishment of a Discount for Lack of Marketability is a factually intensive endeavor that is

heavily dependent upon the experience and capability of the valuator."). Marketability has an influence on value, but so do other forces like liquidity and control. *Id.* at 1. Therefore, Mr. Bitzarakis may well be qualified to discuss marketability—one factor influencing value—but not the other factors that make up a full value assessment. His experience facilitating transactions in this industry, described above, supports this interpretation.

## II. Reliability and Ability to Assist the Trier of Fact

SFCC contends that Mr. Bitzarakis is unable to assist the trier of fact based on his unreliable opinions. Doc. 65 at 9-10. Mr. Bitzarakis admits that he is not qualified to perform spectrum license valuations and therefore testifies without relying on any reviewable technique. *Id.* Even his report expressly took no position on the valuation of the leases in this case. *Id.* at 10. Ztark responds that the *Daubert* factors are not applicable to nonscientific testimony and that Mr. Bitzarakis's firsthand experience facilitating transactions of broadband spectrum renders his testimony reliable and of assistance to the court. Doc. 87 at 6–7.

A district court has discretion not only to decide *whether* expert testimony is reliable, but also *how* to make this determination. *Kumho Tire*, 526 U.S. at 142. In the case of experiential expert testimony, an expert may need to "show his or her work by establishing legitimate bases for the testimony" more rigorously than an expert relying on scientific or technical principles. *U.S. v. Rodriguez*, 125 F. Supp. 3d 1216, 1250-51 (D.N.M. 2015).

Here, Mr. Bitzarakis has demonstrated that he will testify based on his experience in the broadband spectrum market rather than based on reviewable scientific principles. To back up his testimony, he has provided a report indicating the history of educational broadband service ("EBS") licenses of the type in this case, the constraints on different types of licenses, the methods by which different licenses may be priced, and the rationales that prospective licensees

may use when determining which type of license suits their needs. Doc. 65-1 at 3-9. In doing so, he has "shown his work" rather than baldly stated a conclusion. As is the case with all expert testimony, his rationale will face the crucible of the adversarial system to winnow out any errors.

### III. Specialized, Knowledge-Based Testimony

SFCC claims that Mr. Bitzarakis is unable to offer the specialized, knowledge-based testimony required for expert witnesses. Doc. 65 at 11. It argues that he did not obtain facts from which to draw conclusions, that no underlying data renders his opinion testable, and he did not perform an appraisal. *Id.* SFCC's criticism about the foundation for some of Mr. Bitzarakis's testimony has some merit. For instance, Ztark expects that Mr. Bitzarakis will testify that "he has not encountered a buyer interested in purchasing a license encumbered by a 15-year lease" and, as foundation, notes that since 2017 "Mr. Bitzarakis has brokered and otherwise facilitated transactions for over 85 licenses in the 2.5 GHz band." Doc. 87 at 3. However, Mr. Bitzarakis also states in his report that "there are no market comparables for an asset that is not generating revenue and cannot be used for 15 years." Doc. 65-1 at 6. If there are no market comparables because licenses encumbered by a 15-year lease that are not generating revenue have not been on the market, it would not be surprising, and would signify little, that Mr. Bitzarakis has not encountered a buyer interested in purchasing what is not on the market. All of this, however, is fodder for cross-examination. Mr. Bitzarakis's experience selling broadband leases provides a sufficient basis for him to testify about factors that might increase or decrease the value of those leases.

Further, testimony about factors that affect the value of licenses is not the same as appraising the value of the licenses. By analogy, consider a vastly experienced commercial real estate broker who is not qualified to provide real estate appraisals. The broker would have a basis

to testify about factors that affect the value of any given property (e.g., how hard it is to get in or out of the parking lot, whether the property adjoins a homeless shelter or a child daycare center, etc.). But it would be for a licensed appraiser, not a broker, to provide a precise estimate of the value of the property.

Ztark agrees that Mr. Bitzarakis did not perform an appraisal and will not testify as to value because these findings are outside his area of expertise; rather, Mr. Bitzarakis will testify to the likelihood that a prospective licensee will purchase a license encumbered by a fifteen-year lease, an area directly informed by his professional experience. SFCC counters that Ztark is making a distinction without a difference. Testimony that no one would be interested in buying SFCC's license, SFCC asserts, is testimony about the value of the licenses—that the value is zero. Doc. 96 at 2-3. The Court agrees with SFCC on this point and so will limit the scope of Mr. Bitzarakis's testimony. He may testify about factors that affect the value of a license, including factors he asserts SFCC's expert did not consider. Thus, for example, he may testify that the encumbrance of a 15-year lease reduces the value of a license and why. He may also testify that the lack of a current income stream connected to the license reduces its value and why. However, he is precluded from placing a value on the licenses, including by testifying that no one would be interested in buying the license and, therefore, it has a value of zero.

Although Mr. Bitzarakis lacks appraisal qualifications and so is precluded from assessing the value of the licenses, he holds the experience necessary to discuss what goes into a broadband spectrum transaction and what factors a prospective licensee is likely to consider. This experience will be the source of his testimony. Accordingly, SFCC's Motion to Exclude Testimony (Doc. 65) is GRANTED IN PART and DENIED IN PART. Mr. Bitzarakis is allowed to testify, but he is precluded from placing a value on the licenses, including by testifying that no

one would be interested in buying the license and, therefore, it has a value of zero.

**IT IS SO ORDERED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**