**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SANTA FE COMMUNITY COLLEGE,

      Plaintiff/Counter-Defendant,

   vs.                                 Civ. No. 20-1151 SCY/KK

ZTARK BROADBAND, LLC, a cancelled
California Limited Liability Company,

      Defendant/Counter-Plaintiff,

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND
GRANTING IN PART PLAINTIFF'S MOTION TO RECONSIDER**

This dispute arises from two 2006 broadband lease agreements, one made between Plaintiff Santa Fe Community College ("SFCC") and Defendant Ztark Broadband, LLC ("Ztark") and one made between non-party College of Santa Fe ("CSF") and Defendant Ztark. SFCC filed an action for declaratory judgment, seeking a declaration from the Court that both leases are unenforceable against SFCC because: (1) the FCC never approved them; (2) the renewal provisions are unconstitutional; and (3) the renewal provisions are unconscionable. Doc. 35 at 9. Ztark moved for summary judgment on each request for declaratory judgment, and the Court found in its favor on all three, granting Ztark summary judgment and dismissing SFCC's operative amended complaint. Doc. 116 ("Summary Judgment Order" entered February 1, 2022). Presently before the Court is SFCC's Motion to Reconsider, in which it asks the Court to reconsider two portions of the Summary Judgment Order. The first portion regards the Anti-Donation Clause and the second portion regards whether a lease between CSF and Ztark transferred to SFCC at the same time as CSF's license transferred to SFCC. Doc. 122; *see also* Docs. 128 (response), 131 (reply). Having reviewed the briefs and the applicable law, the Court

denies SFCC's motion to reconsider its ruling related to the Anti-Donation Clause and grants

SFCC's motion to reconsider regarding language in its Summary Judgment Order related to the

transfer of a lease from CSF to SFCC.[1]

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not recognize motions for reconsideration.

*Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir.

2002). Instead, a motion for reconsideration "may be construed in one of two ways: if filed

within [28[2]] days of the district court's entry of judgment, it is treated as a motion to alter or

amend the judgment under Rule 59(e); if filed more than [28] days after entry of judgment, it is

treated as a motion for relief from judgment under Rule 60(b)." *Id.* Under the Rule 59(e)

standards, a court may grant a motion for reconsideration in three circumstances: when there is

"an intervening change in the controlling law, the availability of new evidence, or the need to

correct clear error or prevent manifest injustice." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d

941, 948 (10th Cir. 1995). A motion to reconsider is not an opportunity "to revisit issues already

addressed or advance arguments that could have been raised earlier." *United States v. Christy*,

739 F.3d 534, 539 (10th Cir. 2014).

In this case, Plaintiff moves for reconsideration under Rule 59(e). Doc. 121 at 1.

However, Rule 59(e) applies to motions to alter or amend "a judgment" and there is currently no

judgment in this case. *See* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a

decree and any order from which an appeal lies"); 28 U.S.C. § 1291 ("The courts of appeals

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 11, 12, 13.

[2] Since *Computerized Thermal Imagining* was published in 2002, the relevant time period under Rule 59(e) has changed from 10 days to 28 days.

(other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."); *New Mexico v. Trujillo*, 813 F.3d 1308, 1316 (10th Cir. 2016) ("A final decision must dispose of all claims by all parties."). The Court's Summary Judgment Order disposed of all claims brought by Plaintiff SFCC, but did not dispose of Ztark's counterclaims and so was not a judgment from which an appeal lies.

However, while a court retains jurisdiction over a case, it has discretion to reopen "every order short of a final decree." *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated that adjudicates fewer than all the claims or the rights and liability of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). In reviewing an interlocutory order, the court is not required to apply the standards of Rule 59(e) and Rule 60(b). *Fye v. Oklahoma Corp. Com'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008); *Trujillo v. Bd. of Educ. of Albuquerque Public Schs.*, 212 F. App'x 760, 765 (10th Cir. 2007).[3] A district court faced with a Rule 54(b) motion to reconsider may nonetheless use the standards for reviewing a motion to alter or amend a judgment under Rule 59(e) to guide its analysis. *See Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013).

As to both grounds for relief, Plaintiff rests its motion on the need to correct clear error or prevent manifest injustice. Doc. 131 at 2. "A finding is 'clearly erroneous' when although there

---

[3] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ryan v. Druxman*, No. CV 99-1337 JP/RLP, 2000 WL 36739723, at *1 (D.N.M. Sept. 13, 2000) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948)). Manifest injustice, for its part, is "more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law." *Diaz v. King*, No. CV 14-1086 KG/SCY, 2016 WL 8924933, at *2 (D.N.M. Apr. 22, 2016) (citing *Smith v. Lynch*, 115 F. Supp. 3d 5, 12 (D.D.C. 2015)).

## DISCUSSION

In the motion to reconsider, SFCC asks the Court to reconsider two portions of its Summary Judgment Order: (1) whether the Anti-Donation Clause applies to community colleges; and (2) whether the lease agreement between CSF and Ztark was transferred or assigned to SFCC. The extensive history between the parties is summarized in the Summary Judgment Order and so the Court will not repeat it here. *See* Doc. 116. Instead, the Court will recite facts relevant to each issue when analyzing it.

Because application of the Anti-Donation Clause was one of the primary issues addressed in the motion for summary judgment briefing, because resolution of this issue was central to the Court's decision, because the Court's dismissal of Plaintiff's claims is analogous to a judgment, and because the parties apply the Rule 59(e) standard to this issue, so will the Court. Plaintiff's second request for reconsideration is different. Whether the CSF lease transferred was never in contention before the Court issued its Summary Judgment Order. And, as the parties agree, the Court's comments about the CSF lease transferring had no effect on its holdings. As a result, the Court will not apply the Rule 59(e) standard to Plaintiff's request to remove language related to

whether the CSF lease transferred. Instead, the Court will apply its discretion to strike this language as surplusage.

### 1. Anti-Donation Clause

In its operative complaint, SFCC asserts, in part, that

Under the New Mexico Constitution, Art. IX, Section 14 (Anti-Donation Clause), as a public institution SFCC may not sell or lease a public asset for less than fair market value. Forcing SFCC to renew the Capacity Lease Agreements on substantially [the] same terms would be a fraction of the fair market value, in violation of New Mexico's anti-donation clause.

Doc. 35 ¶ 46(a). Accordingly, it seeks a "Declaration from the Court that the renewal provisions of the Capacity Lease Agreements cannot be enforced against SFCC because enforcement would be unconstitutional." *Id.* at 9 ¶ A.

Ztark moved for summary judgment on the Anti-Donation Clause issue, asserting that the Clause does not apply to SFCC; that even if it did, the Clause does not require that the governmental entity received fair market value; and the Clause is not intended to subject to scrutiny arm's length, commercial transactions accompanied by some consideration. Doc. 53 at 9-13. The Court found that it could resolve the issue on the first point, holding that SFCC is not subject to the Anti-Donation Clause, and so declined to address the other arguments. Doc. 116 at 120-21.

The Anti-Donation Clause of the New Mexico Constitution provides that "[n]either the state nor any county, school district or municipality, except as otherwise provided in this constitution, shall directly or indirectly lend or pledge its credit or make any donation to or in aid of any person, association or public or private corporation." N.M. Const. art. IX, § 14. In briefing the summary judgment motion, SFCC argued the Anti-Donation Clause applies to it as either a part of the state or as a school district. Doc. 61 at 19. The Court disagreed. In the present motion

to reconsider, SFCC only challenges part of the Court's prior holding—that it is not a school district for the purposes of the Anti-Donation Clause. Doc. 122 at 2. Specifically, SFCC argues that "the Court's reasoning rendered a provision of the Community College Act definition section superfluous, and the Court's interpretation of the Anti-Donation Clause led to the absurd result of community colleges being the only public educational institutions to not fall within its scope." Doc. 122 at 1-2.

As to its first argument, SFCC explains that the Community College Act includes this provision: "For the purposes of relating community college districts to existing law, community college districts and the community colleges thereof shall not: . . . (4) be considered school districts insofar as the restrictions of Article 9, Section 11 of the constitution of New Mexico are concerned . . . ." NMSA § 21-13-2(B). SFCC thus argues that "[i]f a community college is not a school district, because the definition of 'community college district' and 'school district' are not the same, this portion of the definition of 'community college district' is superfluous." Doc. 122 at 4. In other words, SFCC argues that because § 21-13-2(B)(4) specifically states that a community college is not a school distinct for one section of the New Mexico Constitution, by negative implication it must be considered a school district for the Anti-Donation Clause or the statement in § 21-13-2(B)(4) would be superfluous.[4]

But the Court already addressed this argument:

> As an initial matter, the Court notes SFCC's argument fails to recognize that the state legislature provided separate definitions for school districts and community college districts. If the state legislature had intended school districts and

---

[4] SFCC acknowledges that the New Mexico Constitution uses the term "school district" in several other articles. Doc. 122 at 5 n.3. SFCC does not address, however, whether its argument extends to those other articles and if the Court should consider the term "school district" in the other articles to encompass community college districts. Nor does SFCC explain why its argument would not logically extend outside the Anti-Donation Clause. In any event, the impact of the references to "schools districts" in other articles is beyond the scope of this Order.

> community college districts to be the same for other purposes of the state
> constitution, one would not expect those terms to be defined separately.
>
> More importantly, having separately defined "school district" and "community
> college district", the decision to include "school district" but not "community
> college district" in the Anti-Donation Clause is significant. . . . Here, the Anti-
> Donation Clause unambiguously includes the term "school district" and
> unambiguously excludes the term "community college district." Given that the
> state legislature chose to separately define "school district" and "community
> college district" and then chose to enumerate only "school district" in the Anti-
> Donation Clause, the Court will not read into that Clause an additional
> enumeration the state legislature could have, but did not, include.

Doc. 116 at 17-18. In other words, the Court examined Plaintiff's argument but found the

separate definitions of the school district and community college district and the plain language

of the Anti-Donation Clause more persuasive.

SFCC specifically takes issue with one statement made by the Court: "More importantly,

having separately defined 'school district' and 'community college district', the decision to

include 'school district' but not 'community college district' in the Anti-Donation Clause is

significant." Doc. 116 at 18. SFCC argues that this statement and the resulting analysis relies on

an erroneous timeline. It explains that the New Mexico Constitution was adopted in 1911, years

before the Community College Act was enacted in 1963 and revised in 1964. Thus, SFCC argues

that the Court's analysis "assumes that the Community College Act and its definitions came

before the Anti-Donation Clause" and as such "[r]eliance on the legislature's failure to include in

the Anti-Donation Clause a term or definition that did not exist in 1911 is erroneous and worthy

of reconsideration." Doc. 131 at 4. SFCC, however, acknowledges that "[t]he Anti-Donation

Clause has been amended seven times, but none of the amendments changed the language at

issue in this motion." Doc. 122 at 5. Indeed, the most recent amendment was in 2010, well after

the Community College Act was enacted. As such, after defining "community college district"

separately from "school district", the legislature has had the opportunity to amend the Anti-

Donation Clause and enumerate community college district in the Clause, but it has not done so. And again, the Court declines to read into the Anti-Donation Clause an additional enumeration not in the Clause.

As to SFCC's second argument—it would be absurd to interpret community colleges as being the only public educational institutions that do not fall within the Anti-Donation Clause's scope—SFCC did not previously raise this specific argument even though it could have. It is just another argument based on statutory interpretation. *See United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (a motion to reconsider is not an opportunity "to revisit issues already addressed or advance arguments that could have been raised earlier").

However, even considering the merits of the argument, the Court rejects it. First, as set forth in its Summary Judgment Order, differences exist between community colleges and schools included in the enumerated list. Doc. 116 at 16-17. Therefore, a decision to omit community colleges from the enumerated list would not necessarily be absurd. Second, SFCC has presented no evidence that the legislature has ever considered whether to add community colleges to the enumerated list. Whether the absence of community colleges from the list is the product of a conscious choice or an oversight is unknown. The legislature may have had a reason for leaving community colleges out of the enumerated list in the Anti-Donation Clause. What is known, however, is that community colleges are not on the list. And, whether community colleges should or should not be on the list is a question for the New Mexico state legislature, not this Court. The Court will not read into the Anti-Donation Clause an additional enumeration that the Clause does not contain, even if it means that community colleges are the only public education institutions left out of the Clause.

In sum, SFCC has not shown a clear error that needs to be corrected. Instead, it simply repeats the arguments it made in its prior brief, which the Court previously rejected.

## 2. CSF Lease Transfer

In the Summary Judgment Order, the Court made two statements regarding a lease transfer that SFCC now takes issue with: (1) "This dispute arises from two broadband lease agreements Defendant Ztark Broadband, LLC ('Ztark') made in 2006: one with Plaintiff Santa Fe Community College ('SFCC') and another with a different entity, and later transferred to SFCC," Doc. 116 at 1; and (2) "To be precise, SFCC has been a party to one of the 2006 lease agreements since its inception. It was not party to the 2006 agreement between Ztark and CSF. However, the relevant language of both lease agreements is the same and CSF transferred its license and lease agreement to SFCC a few years after its execution," *id.* at 34 n.15. SFCC specifically takes issues with the characterization that CSF transferred its lease with Ztark to SFCC when CSF transferred its license. Instead, SFCC asserts, the license transferred from CSF to SFCC free of any encumbrances.

For context, the Court provides the following facts, taken from the undisputed material facts in the Summary Judgment Order. In 1995, the FCC issued broadband spectrum licenses to SFCC and non-party CSF. Doc. 116 at 3. SFCC and CSF forfeited those licenses in 2005 but the FCC reinstated and renewed the licenses in June 2009. *Id.* In 2006, Ztark entered into two separate Capacity Lease Agreements, one with SFCC and one with CSF, where Ztark agreed to lease each school's excess broadband capacity for 15 years. *Id.*

In 2010, CSF assigned its broadband spectrum license to SFCC. *Id.* at 5. The parties entered into an "Agreement for the Transfer and Lease of License" and an "Asset Purchase Agreement" regarding the license originally held by CSF (and now transferred to SFCC). *Id.*

SFCC agreed to pay CSF $95,000 for the assignment. *Id.* at 5-6. SFCC, however, did not pay

CSF for the license; instead, as part of this transaction, Ztark agreed to pay, and did pay, this

amount to CSF on behalf of SFCC. *Id.* at 6. CSF and SFCC agreed this would satisfy Ztark's

lease fee obligation under its 2006 lease agreement with CSF. *Id.*

 SFCC does not dispute that Ztark, not SFCC, paid CSF in connection with the license

CSF transferred to SFCC. *See* Doc. 131 at 9. Nonetheless, SFCC argues for the first time in the

present motion that,

> Contrary to the Court's finding, the record supports a conclusion that, although
> the broadband license CSF previously held ("CSF License") did transfer to SFCC,
> the CSF Lease did not. The record is devoid of any evidence showing a transfer or
> assignment of the CSF Lease. Rather, the evidence in the record, if anything,
> supports the conclusion that the CSF License transferred without any
> encumbrances.

Doc. 122 at 2. To support its argument, SFCC points to the Asset Purchase Agreement entered

between CSF and SFCC (Doc. 53-8) and the Agreement for the Transfer and Lease of License

between SFCC and Ztark (Doc. 53-7). SFCC argues that the Asset Purchase Agreement only

transferred the "FCC License," Doc. 53-8 ¶ 1.1, and indicated that the Title of the License was

transferred "free and clear from all encumbrances," *id.* ¶ 3.2. As to the Transfer and Lease of

License, SFCC argues that document provided that SFCC and Ztark would enter a lease at some

point in the future, after the transfer of the CFS License to SFCC, which never happened. Ztark,

on the other hand, provides several legal theories it asserts "lead to the common conclusion that

SFCC took ownership of CSF's spectrum license in 2011 subject to Ztark's rights under its 2006

lease agreement with CSF." Doc. 128 at 19.

 Although the parties disagree about whether the lease between CSF and Ztark transferred

to SFCC along with CSF's license, the parties agree that neither side raised the lease-transfer

issue in connection with briefing on Ztark's summary judgment motion. *See* Doc. 128 at 10;

Doc. 131 at 7. Indeed, SFCC indicates that it was the Court's reference to the lease transfer in its Summary Judgment Order that caused it to think of and assert the argument that the lease of CSF's license did not transfer along with the transfer of CSF's license. *See* Doc. 136 at 2 (SFCC making this argument in response to the related motion to strike). Further, the parties agree that resolution of the lease-transfer issue would have no effect on any holding in the Court's Summary Judgment Order. Doc. 128 at 2 (Ztark, pointing out that "SFCC again does not request the Court, even assuming that the statement is erroneous, to reverse any of its February 1, 2022, rulings"); Doc. 131 at 1 (SFCC, stating that "Ztark is correct in its assessment that SFCC is not currently asking for reversal of the Court's Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment").

At the January 6, 2022 hearing on the motion for summary judgment, both parties proceeded with the understanding that the lease of the license did transfer with the license. *See* hearing transcript, Doc. 129 at 67:14 (SFCC's counsel discussing the Asset Purchase Agreement between CSF and SFCC and stating "[a] lease in this business is considered an encumbrance on the license"); Doc. 131 at 9 (SFCC explaining that it "made that point [at the oral argument] in the context of arguing that Ztark was ignoring the CSF Lease, or behaving in a way that indicated that the CSF never took effect"); Doc. 128 at 11 (Ztark expressing its understanding of this point at oral argument: "SFCC's point at oral argument thus appears to have been that, if CSF was representing that its license was being sold to SFCC free and clear of any encumbrances, then, because the lease agreements *would* constitute an encumbrance that would not permit the license to be sold free and clear, CSF's warranty indicates that Ztark must have understood that its lease agreements were not in effect.").

As the parties' extensive briefing on the topic makes clear, any previous understanding the parties had that the lease of CSF's license transferred with its license has since changed; both sides now assert non-frivolous arguments regarding whether the lease of the license transferred with the license. At the time the Court issued its Summary Judgment Order the parties were proceeding with the understanding the lease of the license transferred with the license. Because this issue had no bearing on the outcome of the Court's order, the Court had no occasion to request arguments about whether the lease transferred.

Nor does the Court need to consider the competing arguments the parties have now made to resolve the present motion. The present motion asks the Court to withdraw two stray comments it made about the lease of the CSF license transferring at the time CSF's license transferred. Because the Court did not consider the parties' present arguments (or any arguments on the issue for that matter) when it made its comments, because whether the lease of the CSF license transferred is now in dispute, and because resolution of this dispute has no bearing on the outcome of the Court's Summary Judgment Order, the Court grants SFCC's motion to the extent it asks the Court to withdraw its two comments about the transfer of the lease of CSF's license to SFCC. More specifically, the Court will re-issue its February 1, 2022 Summary Judgment Order (Doc. 116) with the following revisions: (1) page 1 of the Order shall now read: "This dispute arises from two 2006 broadband lease agreements, one made between Plaintiff Santa Fe Community College ("SFCC") and Defendant Ztark Broadband, LLC ("Ztark") and one made between non-party College of Santa Fe ("CSF") and Defendant Ztark; and (2) page 35, footnote 15 shall now read: "To be precise, SFCC has been a party to one of the 2006 lease agreements since its inception. It was not party to the 2006 agreement between Ztark and CSF. However, the

relevant language of both lease agreements is the same and CSF transferred its license agreement to SFCC a few years after its execution."

The Court's decision to withdraw this now-disputed and non-essential language from its Summary Judgment Order should not be construed as a comment on whether SFCC's new argument should be time-barred or on whether, if the argument is not time barred, it is meritorious.

## CONCLUSION

For the reasons discussed above, Plaintiff SFCC's Motion to Reconsider (Doc. 122) is DENIED IN PART and GRANTED IN PART.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by consent**