IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANTA FE COMMUNITY COLLEGE,

    Plaintiff/Counter-Defendant,

vs.                                                                          Civ. No. 20-1151 SCY/KK

ZTARK BROADBAND, LLC, a cancelled
California Limited Liability Company,

    Defendant/Counter-Plaintiff,

### ORDER SETTING HEARING ON MOTION TO STRIKE[1]

At the beginning of this case, the parties filed a Joint Status Report ("JSR") in which they entered into the following stipulation: "The College of Santa Fe assigned its interest in its Capacity Lease Agreement with Ztark to Plaintiff as of March 10, 2010." Doc. 7 at 2 ¶ 3. A year and a half later, Plaintiff Santa Fe Community College ("SFCC") filed a notice correcting or withdrawing that stipulation. Doc. 130. In response, Defendant Ztark Broadband, LLC ("Ztark") filed "Objection to, and Motion to Strike, Plaintiff and Counter-Defendant Santa Fe Community College's 'Notice of Correction or Withdrawal of Stipulation.'" Doc. 135; *see also* Doc. 136 (response); Doc. 138 (reply). To more fully address whether the Court should permit SFCC to withdraw the stipulation, and what impact doing so would have on this case, the Court sets a hearing on the motion to strike.[2] To assist the parties in their preparation for the hearing, the Court provides the below guidance.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 11, 12, 13.

[2] Shortly before Ztark filed the motion to strike, SFCC filed a motion to reconsider. Doc. 122. Ztark requested a hearing on the motion to reconsider. Doc. 133. However, for the reasons explained in the contemporaneously-filed Memorandum Opinion and Order, the Court is able to

1. **Procedural and Factual Background**

The Court understands the following facts to be undisputed. If the parties dispute any of the facts set forth below, they should so advise the Court at the hearing in this matter.

In 1995, the FCC issued broadband spectrum licenses to SFCC and non-party College of Santa Fe ("CSF"). Doc. 116 at 3. SFCC and CSF forfeited those licenses in 2005 but the FCC reinstated and renewed the licenses in June 2009. *Id.* In 2006, Ztark entered into two separate Capacity Lease Agreements, one with SFCC and one with CSF, where Ztark agreed to lease each school's excess broadband capacity for 15 years. *Id.*

In 2010, CSF sold its license to SFCC. *Id.* at 5. This sale was governed by a March 10 Asset Purchase Agreement ("APA") between CSF and SFCC. Doc. 53-8 at 1, 2, 5. "In consideration of the transfer by [CSF to SFCC] of the FCC License" SFCC agreed to pay CSF the purchase price of $65,000. *Id*. at 1 ¶ 1.1. Rather than SFCC providing these funds, however, Ztark agreed to "have delivered to [CSF] the Purchase Price on behalf of [SFCC], by wire transfer of immediately available funds." *Id*. at 5 ¶ 7.4.[3] Further, as part of the APA, Ztark agreed to "have delivered to [CSF] an additional payment of Thirty Thousand Dollars ($30,000) (the 'Additional Payment'), by wire transfer of immediately available funds." *Id*. ¶ 6.3. The parties do not dispute that Ztark did in fact pay CSF the $95,000 contemplated in the APA. *See* Doc. 131 at 9. CSF and SFCC agreed this payment would satisfy Ztark's lease fee obligation under its 2006 lease agreement with CSF. Doc. 116 at 6.

---

resolve the motion to reconsider without a hearing, Doc. 143, and so denies Ztark's request. Instead, the Court finds that a hearing would be more useful on the motion to strike.

[3] The APA has a signature block for Ztark under the heading "AGREED AS ITS INTERESTS AND OBLIGATIONS APPEAR" but the copy of the APA in the Court files is not signed by Ztark. Doc. 53-8 at 8.

Also on March 10, 2010, Ztark and SFCC entered an "Agreement for the Transfer and Lease of License." Doc. 53-7. As part of this agreement between Ztark and SFCC, "Ztark shall pay directly to CoSF, in immediately available funds, the Sixty-Five Thousand Dollar ($65,000) purchase price (the 'Purchase Price') for the transfer of the License from CoSF . . ." *Id*. at 1 ¶ 1. Further as part of the agreement, "From the date hereof, SFCC shall not enter into any agreement, understanding, or arrangement or commence any discussions, negotiations, or consultations with any third party with respect to the leasing of any excess capacity on the Channels without first obtaining the prior written consent of Ztark." *Id.* ¶ 3. And, "When SFCC takes transfer of the License, SFCC and Ztark, or an affiliated or assigned entity of Ztark, agree to enter a Capacity Lease Agreement in exactly the form attached hereto as <u>Appendix A</u> for the lease of the excess capacity on the Channels." *Id.* ¶ 3.[4]

SFCC filed the present declaratory judgment action on October 6, 2020, asserting that neither lease is enforceable against it because renewal of the leases would violate the New Mexico Constitution, the leases were never consummated because the FCC never approved them, and the renewal provisions are unconscionable. Doc. 35 at 8 (amended complaint, asserting the same).

At the start of the case, on December 1, 2020, the parties stipulated in the JSR: "The College of Santa Fe assigned its interests in its Capacity Lease Agreement with Ztark to Plaintiff as of March 10, 2010." Doc. 7 at 2 ¶ 3. The Court adopted the JSR on December 11, 2020 as part of its Scheduling Order. Doc. 16. At the very end of discovery, Ztark moved for summary judgment on SFCC's three requests for declaratory judgment, which the Court granted. Doc. 116

---

[4] Paragraph number 3 appears twice in the Agreement for the Transfer and Lease of License. Doc. 53-7 at 1.

(Summary Judgment Order). In the Summary Judgment Order, the Court made two related statements regarding the CSF license/lease transfer: (1) "This dispute arises from two broadband lease agreements Defendant Ztark Broadband, LLC ('Ztark') made in 2006: one with Plaintiff Santa Fe Community College ('SFCC') and another with a different entity, and later transferred to SFCC," Doc. 116 at 1; and (2) "To be precise, SFCC has been a party to one of the 2006 lease agreements since its inception. It was not party to the 2006 agreement between Ztark and CSF. However, the relevant language of both lease agreements is the same and CSF transferred its license and lease agreement to SFCC a few years after its execution," *id.* at 34 n.15.

SFCC filed a Motion to Reconsider asking, in part, for the Court to reconsider those two statements in the Summary Judgment Order. Doc. 122. While the parties were briefing the motion to reconsider, SFCC filed a "Notice of Correction or Withdrawal of Stipulation," directed at the JSR stipulation regarding CSF assigning its lease with Ztark to SFCC. Doc. 130. In that notice, SFCC asserted that the discovery process revealed, based on the terms of the Asset Purchase Agreement, that CSF transferred its FCC *license* to SFCC, not the *lease* agreement with Ztark. Doc. 130 at 2. SFCC "therefore gives notice that it is correcting the stipulation in the JSR/PDP to state: 'The College of Santa Fe assigned its interest in its FCC License with Ztark to Plaintiff as of March 10, 2010.'" *Id.* In the alternative, SFCC gives notice that it is withdrawing the stipulation altogether. *Id.* In response, Ztark filed the present motion to strike. Doc. 135.

2. **Legal Standard to Apply**

The parties dispute which legal standard applies to the withdrawal of a stipulation made in a joint status report and so the Court provides this guidance in advance of the hearing. As the parties' briefs elucidate, standards vary depending on the type of stipulation and the timing of the request to withdraw the stipulation. Nonetheless, a few guiding principles are clear. First, "[a]

4

stipulation is an admission which cannot be disregarded or set aside at will." *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097 (10th Cir. 1991); *see also XY, LLC v. Trans Ova Genetics, LC*, No. 17-CV-00944-WJM-NYW, 2018 WL 7512225, at *2 (D. Colo. Dec. 5, 2018) ("[A] stipulation is a binding agreement between parties that cannot simply be disregarded or set aside by will. By its very essence, therefore, [one side] cannot unilaterally rewrite and substitute a stipulation agreed to by the Parties and filed with the court.") (cleaned up), *report and recommendation adopted*, 2021 WL 5826417. Rather than filing a motion to withdraw its stipulation, SFCC filed a notice that it was amending or withdrawing its stipulation. Despite styling its filing as a "Notice," however, the first paragraph of SFCC's filing states, "SFCC now *requests* [that the stipulation in the JSR] be corrected or withdrawn." Doc. 130 at 1 (emphasis added). Moreover, SFCC does not argue that it can unilaterally withdraw from a stipulation. Given that the parties primarily focus their arguments on whether the Court should allow SFCC to withdraw its stipulation, rather than on whether an attempted unilateral withdraw would be proper, the Court will consider the same.

Second, in using its broad discretion to determine whether to hold a party to a stipulation, a court must consider "the interests of justice." *Wheeler*, 935 F.2d at 1098 (internal citation omitted). Always mindful of the judicial system's overarching goal of achieving a result based on truth, courts are loathe to adopt an untrue stipulation and thereby hinder, rather than promote, the truth-seeking process of our judicial system. The truth-seeking process of the judicial system, however, cannot function without order. Allowing every eleventh-hour change of strategy to trigger more discovery, or allowing stipulations to be withdrawn at a whim, would promote gamesmanship and create chaos within the judicial system that would also hinder, rather than promote, its overarching truth-seeking function.

*In re Durability*, on which both parties rely to support their differing positions about which standard applies, recognizes that, when considering whether to enforce stipulations, courts generally apply "equitable considerations." 212 F.3d 551, 555 (10th Cir. 2000). One of these equitable considerations relates to the degree of prejudice withdrawing a stipulation will cause the non-withdrawing party. *Id*. at 556-57. The likelihood that the withdrawal of a stipulation will cause prejudice is increased based on the lateness of the stage of litigation at which the withdrawal is made. *Id.* at 556 ("The stage at which a party requests relief from a stipulation bears heavily on whether the court should grant the relief, and a court must determine whether there are other overriding rules or policy considerations that compel granting or denying such relief."); *see also* Fed. R. Civ. P. 26(e) (requiring timely disclosures of new or corrective information in discovery). In deciding whether SFCC may withdraw its stipulation, the Court, therefore, must consider the parties' arguments regarding prejudice and the current stage of litigation. The parties should be prepared to address these issues at the hearing.

Less clear is the extent to which *In re Durability*'s guidance to consider equitable considerations contemplates considering the circumstances related to the transfer of CSF's license to SFCC. This is not a case where one party entered a stipulation reasonably based on information known at the time, only to later learn new information that indisputably refuted that earlier, reasonable misapprehension. Here, SFCC was a party to both the March 2010 Asset Purchase Agreement with CSF (Doc. 53-8) and the Agreement for the Transfer and Lease of License with Ztark (Doc. 128-2). Therefore, at the time SFCC stipulated in the JSR that the lease between CSF and Ztark transferred to SFCC, SFCC knew, or should have known, about the circumstances surrounding the transfer of CSF's license to SFCC. The equitable force of this situation is not as compelling as the equitable force of allowing a party to withdraw a stipulation

6

that it reasonably made at the time, only to later learn that it was premised on a reasonable misapprehension of the facts.

In addition to the fact that SFCC knew in 2010 the information it now relies on to justify the withdrawal of its 2020 stipulation, the stipulation SFCC seeks to withdraw is not indisputably incorrect. In other words, withdrawing the stipulation would not be making room for some other assertion of fact that is indisputably correct. When looking at the overarching goal of our judicial system, removing an improvidently entered and untrue stipulation so that "truth may out" is often justified. Whether the stipulation here is untrue, however, remains in dispute. Ztark presents numerous arguments in support of its position that CSF's lease did transfer with its license. For instance, Ztark argues that an entity that obtains a license knowing that license is encumbered to a third party is also bound by the encumbrances associated with the license. Doc. 128 at 19-21 (Ztark's response to the motion to reconsider, in which it argues the merits of the lease transfer issue). Given that Ztark, not SFCC, paid CSF a $65,000 "purchase price" and a $30,000 "additional payment" in connection with the transfer of the license from CSF to SFCC, Ztark argues that SFCC knew full well when it acquired the license that it was encumbered by a lease with Ztark. Doc. 138 at 12. In fact, CSF and SFCC agreed this payment would satisfy Ztark's lease fee obligation under its 2006 lease agreement with CSF. Doc. 116 at 5 (undisputed material fact in Summary Judgment Order). Thus, Ztark argues, SFCC would know the reason Ztark paid $95,000 to CSF for a license Ztark would not thereafter hold was to preserve its lease on the CSF license.

SFCC, which argues that only the CSF license (not the lease) transferred to it in 2010, however, also asserts non-frivolous arguments in support of its position. Specifically, SFCC relies on the plain language of the Asset Purchase Agreement and Agreement for the Transfer

and Lease of License to argue that the license transferred free and clear of any encumbrances. Doc. 122 at 8-10. Further, SFCC argues that, although the parties agreed to enter into the lease agreement attached as Exhibit A to the license transfer agreement, neither party thereafter attempted to enter into such an agreement. *Id.* at 10.

The parties' competing non-frivolous arguments regarding whether CSF's lease transferred with its license, at a minimum, guarantees additional litigation on this issue if the Court grants SFCC's request to withdraw its stipulation. If the outcome of such litigation may depend on yet-to-be-taken discovery, such litigation will be reserved for another day and not a subject of the upcoming hearing. However, relevant to the upcoming hearing is whether the fact that SFCC's stipulation would be removed to clear the way for a disputed allegation, rather than an undisputed fact, bears on the equitable considerations this Court should consider.

The parties also dispute how stringent the standard should be for SFCC to withdraw the JSR stipulation. SFCC asserts *In re Durability* requires district courts to consider the more lenient standard of Rule 36 (for requests for admissions), in which "[t]he court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than [ ] on the moving party's excuses for an erroneous admission."[5] Doc. 136 at 5 (quoting *In re Durability*, 212 F.3d at 556). Ztark disagrees and asserts that, along with *In re Durability*'s other requirements, "Rule 16(b)(4)'s good cause standard for any modification of a pretrial order" applies because *In re Durability* mandates that a district court apply any controlling rule of procedure, the Court

---

[5] Under Rule 36, "the court may permit withdrawal or amendment [of a response to a request for admission] if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

adopted the stipulation in its Scheduling Order,[6] and Rule 16(b)(4) provides a "good cause" standard for modification of that order. Doc. 138 at 5.

The Court agrees with Ztark that Rule 16(b)(4)'s good cause standard applies, but not necessarily for the reasons Ztark offers. First, although *In re Durability* provides general guidance, it is not on point; thus, it is not clear that it dictates the precise standard applicable in this case. *In re Durability* involved the question of whether a life insurance premium was paid. 212 F.3d at 553. After a company, Durability, purchased a life insurance policy from Sovereign Life Insurance Company, a group of creditors filed an involuntary bankruptcy petition against Durability. *Id*. The insured thereafter died and Sovereign refused to pay out, arguing that a premium had not been paid while Durability was in bankruptcy proceedings. *Id*. at 554. While discovery was ongoing, Sovereign filed a motion for summary judgment, providing evidence of a returned check, an undated notice of lapse, and a notice of returned check as evidence of the nonpayment. *Id*. The trustee stipulated that these facts were not in dispute and based several "propositions of law and fact" on the factual assumption that the premium had not been paid. *Id*. However, before the lower court ruled on Sovereign's summary judgment motion, the trustee obtained an accounting ledger and affidavit from the bankruptcy receiver that indicated the receiver had in fact paid this premium. *Id*. This new evidence, if considered, created a genuine

---

[6] Ztark used the term "pretrial order" rather than "scheduling order." Doc. 138 at 5. Although the Court's scheduling order is a pretrial order in the sense that it is an order issued before trial, use of the term "pretrial order" to describe any order other than the "final pretrial order" described in Rule 16(e) threatens to cause confusion. As Rule 16(e) states, a final pretrial order is an order that the court issues after holding "a final pretrial conference to formulate a trial plan" which is "held as close to the start of trial as is reasonable . . . ." A court may only modify this order "to prevent manifest injustice." *Id.* To avoid confusion with the final pretrial order Rule 16(e) describes, the court will refer to its December 11, 2020 order adopting the joint status report as a "scheduling order," not a "pretrial order."

issue of material fact fatal to Sovereign's summary judgment motion. *Id*. at 557-58. The lower court, however, refused to let the trustee withdraw its initial stipulations and, based on the trustee's initial stipulations, granted Sovereign's motion for summary judgment. *Id*. at 554.

The Tenth Circuit reversed this decision, finding that the lower court abused its discretion "by refusing to consider, when ruling on a motion for summary judgment, new evidence contradicting an earlier stipulation." *Id*. at 555. *In re Durability*, thus, involved a stipulation made during summary judgment briefing that the stipulating party, upon learning new information in discovery, attempted to withdraw before the court issued its decision on the summary judgment motion. Here, SFCC did not learn new information in discovery. It possessed the information it needed to make its new argument in 2010, years before this lawsuit was filed.

Further, the Tenth Circuit repeatedly emphasized that its *In re Durability* decision addressed a stipulation made in connection with summary judgment briefing. *Id.* at 554-55, 557. The standard for withdrawing a stipulation made at the beginning of summary judgment briefing, based on new information obtained and submitted before the court issues a decision on the summary judgment motion, does not necessarily apply here. Unlike *In re Durability*, the stipulation in the present case has no bearing on the outcome of a summary judgment motion. Here, the Court's Summary Judgment Order does not analyze whether CSF transferred its lease to SFCC because that issue was not a topic of Ztark's summary judgment motion. At SFCC's request, the Court has removed language from its Summary Judgment Order that referenced a lease transfer from CSF to SFCC. Doc. 143. Rather than dealing with a motion to withdraw a stipulation made as part of summary judgment briefing and filed before the court issued a decision on the summary judgment motion, the present case involves a request to withdraw a

10

stipulation filed after opposing counsel relied on the stipulation in forming a discovery strategy, after the close of discovery, and after receiving a ruling on dispositive motions.

Second, Rule 16(b)(4)'s good cause standard does not necessarily to this case for the reasons Ztark offers because, on its face, Rule 16(b)(4) applies to the *modification* of a schedule. The Court's scheduling order does not contain a deadline to withdraw stipulations. Therefore, allowing SFCC to withdraw its stipulation would not, standing alone, constitute a schedule modification and so arguably would not trigger application of Rule 16(b)(4).

Nonetheless, Ztark convincingly argues that, had SFCC not stipulated that the lease of CSF's license transferred at the same time as the license transferred, Ztark would have conducted discovery on this issue and would have filed a counterclaim related to this issue. Doc. 138-1 ¶ 6 (affidavit of Henry Bohnoff, counsel for Ztark). SFCC states it would not object to such discovery or an amendment to the counterclaim[7] and asserts that the ability to re-open discovery and amend the counterclaim are factors militating against a finding of prejudice. Doc. 136 at 9. The Court agrees that, if it were to allow SFCC to withdraw its stipulation it would also need to re-open discovery and permit Ztark to amend its counterclaim. In other words, granting SFCC's request would require the Court to significantly modify its Scheduling Order, under which discovery closed on June 9, 2021. Doc. 16. Because granting SFCC's request to withdraw its stipulation would result in modification of the Court's Scheduling Order, Rule 16(b)(4)'s good cause standard applies.

In sum, at the hearing, the parties should be prepared to discuss the prejudice to Ztark if the stipulation is withdrawn, the prejudice to SFCC if its withdrawal request is denied, whether

---

[7] SFCC makes clear, however, that in doing so, it is not waiving its ability to defend against the counterclaim by asserting affirmative defenses such as that the counterclaim is time-barred. Doc. 136 at 9.

circumstances surrounding the 2010 license transfer bear on SFCC's withdrawal request, whether withdrawing the stipulation should be affected by the parties' arguments on the merits of the issue, and whether SFCC has shown good cause to amend the Scheduling Order and reopen discovery.

3. **Other Issues to Address at the Hearing**

As set forth above, if the Court were to grant SFCC's request to withdraw its stipulation, the Court would be inclined to re-open discovery if Ztark requested the opportunity to conduct additional discovery. As a result, the parties should be prepared to discuss how long they expect it would take to complete such discovery and what discovery parameters should be imposed.

The Court would also like the parties to address, however, whether the merits of this issue could be resolved as a matter of law without additional discovery. Granting SFCC's request to withdraw its stipulation would not be tantamount to a finding that the CSF lease did not transfer with the transfer of its license. If resolution of the lease transfer issue could be decided as a matter of law, and if that resolution favored Ztark, the need for additional discovery would presumably no longer exist. For example, in opposing SFCC's motion to reconsider, Ztark argues, "A purchaser of real property takes title subject to any leases and other encumbrances on the real property of which the purchaser has actual, inquiry, or constructive notice." Doc. 128 at 20. Alternatively, Ztark argues, "even if spectrum licenses are not equated with real property, a purchaser still takes ownership of personal property subject to contract rights that other parties have with respect to the property and of which the purchaser has knowledge." *Id*. at 20-21. These arguments, if decided in Ztark's favor, likely would be dispositive of the lease issue even if the Court granted SFCC's request to withdraw its stipulation. Therefore, the Court would like the

12

parties to address whether, setting aside the stipulation, the lease issue can be resolved as a matter of law before any additional discovery is taken.

4. **Hearing Information**

The Court will hold a hearing regarding the Motion to Strike (Doc. 135) and the above-discussed issues on **December 9, 2022 at 1:30 p.m**. at the Pete V. Domenici United States Courthouse in the Chama Courtroom. If either side prefers that the hearing be conducted by Zoom video conference based on health or other concerns, the Court will consider such a request. If the request is opposed, the requesting party should file a motion. If the request is unopposed, the parties may file a notice or informally contact the Court to advise it that they have agreed to proceed by videoconference.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by consent**